This is a case in which hundreds of thousands of jailed prisoners whose constitutional rights under the Eighth and Fourteenth Amendments not to be subjected to floor-sleeping at the court based on factors that shouldn't have been considered or erroneously considered in its decertification order. It's also a case that resulted in a finding of manel liability for forced floor-sleeping in the 2007 Thomas v. Baca order by the District Court, which is a significant non-monetary victory, which the District Court did not recognize in its award of attorney's fees. And with respect to its award of attorney's fees in general, the District Court disregarded Moreno v. City of Sacramento, that if it is going to reduce attorney's fees for more than 10 percent, it must set forth with sufficient specificity its reasons so that the lawyer can object and this court can meaningfully review the objection. I have some difficulty with that argument. Let me tell you why. I think the judge was pretty specific about why he reduced your request. He may have been wrong. I want to hear your arguments about why he was wrong, but what more explanation should he have given? He said you were only successful as to some things. You weren't successful as to class certification so I'm going to reduce the award on that. I'm not going to award $750 an hour for a paralegal. I think he explained why and explained why he gave a bonus for achieving success outside the two parties. Given all that, what more should he have said? He may have been wrong in all those things, but what more detail would you have asked from him? Well, he just arbitrarily says, for example, that, well, Mr. Yagman's work, when he was an attorney, was only worth, only 100 hours of that should be considered, but there's no basis for saying that. It's just strictly, it's very arbitrary. It takes, I think it's like 1,200 hours, and just say, well, I'm just going to give you 100 hours for that. That's not specificity. It's not saying what's wrong with or why he, why Mr. Yagman shouldn't have been awarded fees for this, that, and the other, such as, for example, preparing for the contempt hearings, having the contempt hearings with respect to Defendant Baca, numerous sanctions motions that had to be filed because of the various things that the defendants had filed, and discovery, all kinds of things, what was there, not adequate discovery. None of this has gone into, it's just he had, and I think he said 600, the court said 600 hours total for class-related materials, which is wrong, but for Mr. Yagman's hours, which were about 1,200 hours before the end of 2007, doesn't go into why he arbitrarily decides it should only be 100 hours. So you're referring to hours before disbarment? Correct. Do you agree that the judge didn't abuse his discretion during the time period when Mr. Yagman wasn't licensed to practice law by not paying him the same amount as he would have paid you? He was majorly underpaid as a paralegal because he was awarded the lowest end of the scale, and obviously his skills were at the highest, so he didn't get... That seems to be a, seems to be making a kind of functional capacity argument that, although disbarred, he was, because of his experience and skills, he was really still performing as a lawyer. Don't you run into a little problem of circularity there? He is no longer a lawyer, he's not supposed to be practicing law as a lawyer, yet because he does have the skills of a lawyer, you want him to be compensated as a lawyer. That seems to be a very difficult argument to sustain. That is the essence of your argument. Officially he's not a lawyer, but he had all the skills of a lawyer and should be compensated. Yeah, I think that's not an issue that I prefer to address at this point. I think the... Let me ask you another question then. There is a curious quality to the class certification issue in this sense. You were successful at one point in this case in getting the certification that you sought, and then because of subsequent changes in the law, that ruling was put at a loss. I assume that you, and this is really what I'm asking you, how much time did you put into defending the ruling that you had already won? It seems to me, I guess you would agree with this, to simply say that you were ultimately unsuccessful and therefore should suffer a large reduction in the attorney's fees overlooks the fact that you were first successful, and obviously you want to defend what you got, and so even though you were ultimately unsuccessful, it seems a bit odd to penalize you for the ultimate lack of success. I guess you would agree with that. Yes, Your Honor, but I want to be sure we're talking about the same orders. Okay. The non-monetary victory occurred with respect to a finding of manel liability for floor sleeping in Thomas v. Baca, the 2007 order, as opposed to the case having been certified in 2005 and then decertified in 2000. But you did, yes, I understand that, but you also, you succeeded in getting a class certified, did you not? Yes, we did. How many hours, I'm having some difficulty figuring this out, you requested about 600 hours for, to be compensated for about 600 hours of work on the class certification issue. That comes out of your, out of the order. How many of those hours were to get the class certified and how many of them were later on to deal with the Walmart issue? I actually had broken that down in the brief, so I don't have it right at hand, but it was much more than, the amount of time actually spent solely on class certification. The judge says, the judge makes a finding I'm looking at ER 11, in the first, that there were 600 hours that were requested. That's what the court says, but there actually were more hours involved, because I had a number of hours, as did Mr. Yagman, and it was broken down in the brief. The judge says 600, he's going to give you 100 to get the class certified, so assuming those numbers are right, and maybe, maybe they're wrong, and we can go back and look at them, is it, at $750 an hour, that would be $75,000 or so to get the class certified? Is that an unreasonable, unreasonable award? I don't, again, once again, I don't believe that the class certification encompassed that many hours. I didn't think so either, and that's, that was, I think you were successful in getting the class certified, and you should have been compensated for that, because the law changed thereafter and that's not your fault, but I don't think that many hours were expended in getting the class certified, were there? No, well, as I said, I believe it can be found in the, in the briefs, but the point being that after the class was certified, a lot of work was done to get the Monell decision of floor sleeping, the floor sleeping was unconstitutional, and that it was done during the class period. No, no, but I want, I'm focusing on Judge Lippis' question, which is that you were successful in getting the class certified, that's a big thing, you should be compensated for that, but I think what you're telling me is you really didn't spend that much time getting the class certified, you spent a lot of time on the Monell issues. That's correct. And so why were you undercompensated, why were you undercompensated on the Monell issues? Because we weren't compensated at all, as far as I can see, because, because 100 hours probably, or very, between the two of us, probably would have gone towards the certification, not the, the actual Monell issues, and preparing to get that. The judge says that the class-related discovery supported your individual Monell claims, and they therefore gave you 100 hours for the class-related discovery, but didn't he also award fees for doing Monell motions, et cetera? No, he didn't. I don't believe that he did. I thought those were just, those were ones, he may have discounted the rates, but didn't he, didn't he award fees for, for seeking the Monell determination, on which you were successful? Very, very small amount, relative to how much time was actually consumed doing that, because that involved discovery, it involved getting all those orders for floor sleepers to be counted. I mean, it was a whole big, long thing, and, and we were relatively not compensated adequately for that, as I was not compensated for the trial preparation of the individual plaintiffs. I, you, you have a situation where I put in 500 hours, and I put them in, the, I was given 100 hours for that. On that issue of trial preparation, I mean, the, I think there have been some references to it this morning, that the, that the liability having been established, that there wasn't anything all that complicated about the damages claims, and, and so the, there seems to be a, a disproportion between the simplicity of those claims and the huge amount of hours that went into, into trial preparation. What, what, what's wrong with that analysis, which the district did? Well, there were, there were numerous motion, numerous proceedings before the district court. There were conferences. There were all the things that you have to do in order to prepare for any trial. There, the defendants alone filed 11 motions in limine. I've never had more than two or three in any case filed before. It was not, it was a, and, and on top of that, the, Mr. Gibson died just about a week before. That changed everything, and some additional work had to be done with respect to that, and it, it was not as simple. It may look simple. It didn't last a long time, but the fact of the matter is, when you prepare for any trial at the district court level, there are all kinds of things that have to be done, and pre-trial conference orders, meeting with, meeting confers, jury instructions, it just goes on and on and on. Well, what would you have us do in this case? What, what relief do you seek? We're, we're not going to, let me start out by saying, I think it's quite unlikely that we're going to go through the application and parse it and make a different award. So, what do you want us to do? Well, make a different award. Well, we're not going to. At least, I, I think that's unlikely. So, so what would, so assuming you don't get that, what would you like us to do? Well, I think it should go back to the district court for him to, for the district court to reconsider his ruling. So what would, if you, if, to the extent he's made rulings, they're in front of us. In other words, you think he may not have explained it correctly, but at least as to some of the judge's rulings. Should we say, no, you're wrong. A hundred hours is too few. It should have been higher. What, what are we supposed to do? I understand your argument that he didn't explain sufficiently. We can always tell a district judge, we, we, we don't have enough explanation here. Take it back and explain again. But on, on the, on substantively, what would you have us do here? Well, I, as I said, I think it seems to me that has, should be remanded to the district court with instructions to reconsider his rulings because they are apparently not, they don't follow the law. They don't follow Moreno. They don't give, I think, adequately, adequately specific information as to why he arrived at the numbers that he arrived at. And, and that's, that's basically it. I mean, it's just, can I ask a question? There's one thing that has to do with the decertification. I mean, I'm at six minutes and the decertification also we believe was an error and that the court could have, well, that's what I wanted to ask you about next. I mean, cause that's really the big issue in front of us. After Walmart, we have a situation where you've got a class of potentially of a million dollars in people. The numbers change in your briefs. At one point you say 7 million, later you say a million, but we have all the people in effect that are eligible to be in the class that passed through the jail during this time period. How do we know, how can we, how's it, how's the court ever going to determine which one of those, which, which people of the class actually slept on the ground? Well, one easy way is that the inmate reception center, which every single one of them has to pass through and the records as to how long they spent in the inmate reception center, which has no bunks. And I think that some seats around the, the, the jail cells, which has a number of people, all of them pass through the inmate reception center and a great many of them spent a lot of time in the inmate reception center. So that would be... That's the people who eventually went to the jails, if you will. Very difficult to figure out. Some of them, some of them had bunks and some of them didn't, right? Well, not the ones who were floor sleepers, but I think... Well, no, no, obviously, I'm trying to figure out who the, who the one, obviously the people who slept on the floor didn't have a bunk. My question is the people who passed through the jail, that, that million something number, some of those folks did not sleep on the ground, right? There were bunks in the jail. Obviously, there were some people who were, had the bunks because otherwise, the other ones wouldn't have had to sleep on the floor. So my question is, as to that group, how in the world do you identify? I'm looking, I find that Brezzano versus ConAgra Foods answers a lot of that in, in the sense that it says you don't have to have, you don't have to have, you don't have to have, you know, I know what the case says. I know your point is you don't have to have perfect ability to match up one and one, but we're dealing here with a million folks. Well, we don't know exactly. Well, you said that, you said a million, so I'm... It might be, it might be because so many people had to sleep on the floor and that's set forth in I think volume four of, with the additional documents that I... Here's, let me ask the question slightly differently, maybe get to the heart of what I think is difficult here. Assume that it's easy, that you can establish liability on some sort of class-wide basis and identify the individuals who are liable. I'm not sure that's, that's, the judge already said it's unconstitutional. Maybe you can even figure out which people actually slept on the ground. How do you do damages? Well, I don't think damages is a part of, of, of certifying or decertifying a class. It's something that could be... Well, but didn't the judge essentially here say, look, I've given a class-wide ruling, a binding ruling on liability. I'm willing to try individual cases if the people show up and tell me that they slept on the ground and where they slept on the ground, but I can't figure out a way to give a class-wide monetary judgment in a way that's manageable. I mean, that's really what he said, although he didn't quite say it in those words. Counselor, just as a follow-up to Judge Hurwitz's question, I'd appreciate it if you'd address it. Is it your position that the constitutional violation itself, apart from any pain and suffering that an individual experienced, apart from any indignities that experience it, that just the constitutional violation itself has a certain monetary value that a jury should be able to determine? I think that it's not that. It's the fact that people, that the pain and suffering comes in, but it doesn't need to be individualized. It can be determined as, as we've suggested all along, as a per diem amount. It could be. And I'm going by... It could, let's assume that it could be. Is it an abuse of discretion for the judge to say, no, I'd rather proceed claim by claim? I've established liability. I've done, I've done what I can do on a class-wide basis, and now let the individual show up and make their claims. Well, actually, that's, again, discussed in the Brazilian case, that people make affidavits saying, I slept on the floor. It can be checked against their records whether or not they're totally incorrect, because the records will show whether they were in jail when they said they were. That's not such a big deal. Now, I'm asking a slightly different question. I apologize for not being precise. I'm not sure the judge would have abused his discretion in certifying, in keeping the class together. My question is, why did he abuse his discretion in saying, well, maybe I could do that, but the better way to do this is to let individuals bring claims, and we'll deal with them, maybe by summary judgment, maybe to the extent that the state disputes them by trial. Well, obviously, that would mean, because there's small claims, notwithstanding the verdict for plaintiffs, they're basically small claims that nobody, no one's going to, they're not going to pursue. So, many of them would just lose out, and I think in Brazil, it says something like 10 or 15 percent, anyhow, only 10 or 15 percent normally respond to claims, and that's true in the cases. It's true in the Brazilian case, which had to do with Wesson Oil, and I think that's, so the amount of people who are actually going to respond with affidavits, they're not going to be that large. So, I don't think, I think that was an abuse of discretion to decertify. There weren't any, nothing was really any different from when he originally certified the case. So, that's why I believe it was an abuse. Thank you very much. Thank you. Mr. Clark. Good morning, once again, Your Honors. Justin Clark for Defendant DiPelli. I think the, I'm going to begin with the decertification issue, simply because I think that is one of the larger issues that's before the Court today. I also have a few comments to make with respect to the attorney's fees issue as well, but since we ended with the decertification, it seems to me to make sense to continue with that discussion. The surest sign that the decertification order was not an abuse of the lower court's discretion was the trial itself with respect to the two named plaintiffs. Even though you had the determination already made that sleeping on the floor is a constitutional violation, it still took three days to adjudicate liability and then to adjudicate damages. Um, there's simply no manageable way in the civil rights context for a civil rights violation that you could adjudicate both the liability function of the liability phase of the trial as well as the damages portion of the trial in any way, shape, or form. It just simply can't be done. Well, the liability portion was already adjudicated, right? No, respectfully, it wasn't, Your Honor. The finding was made that sleeping on the floor was unconstitutional, but that wasn't a finding as to whether or not the two named plaintiffs actually slept on the floor the way they claimed. So there was a, the court did have to make a finding, sorry, the jury did have to make a finding that these two individuals slept on the floor the way they claimed because despite the representations that have been made, there aren't records during the class period for the Thomas, as Your Honor put it, Thomas number one, that's how we refer to it as well, Your Honor. During the Thomas number one period of time, the class period, there are no records that identify the individuals who slept on the floor. Is that true with respect to the detention center as your colleague referred to it? Did people stay overnight in the detention center? They're not supposed to, I'll put it that way. There are circumstances and there were orders issued in the Thomas case at one point in time, the district judge entered an order that actually reduced the capacity of certain cells. The other case that's related to all of these is the Rutherford case. So I guess, well, you know, but my question is, was everybody who passed through the detention center subjected to sleeping on the floor or were only those, those, those, a smaller group that actually remained overnight in the detention center? The answer to your question is no, not everybody who's in the reception center slept on the floor. That's simply because you could show up on a Tuesday and it might take you three or four hours to get through the inmate reception center and then make your way to a permanent housing location. Conversely, if you show up after a long holiday weekend and it's crowded, it could take you longer to get there. So was there any way of identifying those folks who spent more than one night? There are records that identify the, essentially the locations that inmates were at, at a particular time. Those records are problematic for a variety of reasons. And this is, this came up during the trial. It's not a hard and fast, you can't simply look at the records and definitively say this individual was at this particular location for the exact amount of time that the records may indicate. With, frankly, the scanning system that exists in the inmate reception center just isn't that accurate. So did you, at trial, did you have any way of challenge, I gather the plaintiffs came in and asserted, described their experience, how they, slept on the floor for a certain period of time. Did you have any way of challenging those assertions on the basis of any kind of documentary evidence? We did. We came up with the best that we could was to come up with an estimate of about how much time those individuals, how long it took them to work their way through the inmate reception center, and then on top of that, how long they actually slept on the floor, the best we could tell from the records. So yes, there were some records that did assist us in that regard. The other problem we have with respect to the inmate reception center, and there was a representation made that there are no bunks in the facility, that's only partially true. There is a section of the facility where if an inmate comes through and needs some kind of further medical care, they can be referred to another area where there are actually bunks. So this plays into, you simply can't assume that just because somebody was in the inmate reception center and that they were there for more than 24 hours, that that equates to an automatic determination that they slept on the floor. That's just not accurate. Why couldn't a judge have done something like, we see this all the time, and I must admit it's in class action settlements, but we see it all the time. The judge says, look, anybody who slept on the floor with their constitutional rights were deprived, make a claim. If you believe you're in this class, that I've now determined had a constitutional violation, make a claim and we'll then figure out what to do. We'll see how many claims we have, and then we'll then figure out what to do with them. We'll let the county sort them out and see which ones it opposes and doesn't oppose. Why wouldn't that have been an appropriate way to deal with this? Well, for starters, that was never pitched in the lower court, so it's would have approached that concept. But with that being said, you have a sheer number of people here where you have, even by plaintiff's counsel's representations, you have a million potential people who might fall within the class. Even if you propose that concept, we'll see how many claims we get. Let's assume you even have, I don't know, 10,000 claims. Let's assume you even have a For the period of time that records were kept for people who slept on the floor, there were, I believe, 25,000 instances of floor sleeping that were recorded in those records. Counsel, I thought they did propose something like Judge Hurwitz was describing. In that, the colloquy with the judge about the trial plan, I thought they proposed that there be a kind of notice provided through media publications about the liability determination asking people who would see the notice to come forward to describe their experience, and I gather their claim that they did experience sleeping on the floor at the facility. What I was going to get to, Your Honor, is that what does that get you? Is that you end up in the circumstance where you have 25,000 people who now you have to find a way to adjudicate their damages and liability. So even if you have the circumstance where you overlook the difficulty of figuring out how many people you're going to have who make a claim, which I would relate to an ability to identify class members and notify them, even if you overcome that hurdle, you still end up with the problem of you have no viable way. At least it's more concrete now. We're not talking about these astronomical numbers, a million or something like that. You now know how many people you're talking about, and then perhaps you can begin to make more informed judgments about how you're going to test their claim that they slept on the floor, how you're going to assess the damages. Well, and respectfully, though, at the same time, Your Honor, even if that's true, it still doesn't address the other problems. So even if the district court had done that, it just doesn't get you very far, and I think the district court recognized that. What other problem are you referring to? An inability to actually determine liability or figure out whether or not somebody actually slept on the floor as they claim. Are you making an argument that there was a different qualitative injury to people who slept in clean mattresses and clean cells and people slept on the floor in dirty cells? That was a distinction that Judge Preggerson made. That would certainly go into a damages calculation. That one person who slept on the floor in a dirty, I would hope that my clients wouldn't have had dirty and vermin-infested cells, but it's also a big jail system. That person would certainly have experienced a different level of pain and suffering than would a person who slept on a mattress on the floor in a freshly painted, clean cell by himself as compared to somebody who may have been not in that circumstance. That's certainly relevant. And the law is very, very clear that absent a showing of actual harm, you simply can't award actual damages. There was some discussion by plaintiff's counsel about how the court could simply award a, quote-unquote, per diem award. There's no such thing. If the court is going to, and also this actually speaks to your Honor's question about the ability to award damages simply based on the value of a constitutional right. The law is very, very clear that you can't award damages. Or you could get nominal damages. You could. That's correct. Right. So had the plaintiffs only sought nominal damages, then the trial issue would have gone away. And that's exactly what- The damages trial issue would have gone away. I would not have the ability to be correct. That issue would no longer be on the table, but that issue was discussed very extensively at the decertification hearing, and the district court judge made substantial efforts. And actually, if you look at the decertification transcript, which is in the record at Volume 2, Exhibits Pages 4 through 41, plaintiff's counsel at that point in time first said they weren't seeking damages for pain and suffering, but then later changed their mind and said, no, we are seeking damages for pain and suffering. And they were never able, either at oral argument or in their supplemental briefs that were filed after the decertification hearing, they were never able to put forward any viable means by which damages could be calculated that wouldn't have required individualized proof as to each specific class member's claims. Did they ever argue damages based on halal versus the state of Marcos? They did, Your Honor. In the trial plans, and I use the term loosely, that were submitted, and I'd actually like to point out that those were submitted as part of the briefings that represent the class following Mr. Yagaman's disbarment. They were not submitted as part of the decertification papers. Does that matter? I think it does, Your Honor. See, I'm not sure it makes any difference in terms of the ultimate outcome, but I thought the judge's statement that no trial plan had been filed is at least misleading. One filed, as you say, much earlier, three years before, and then in the decertification hearing, counsel said, that's our plan. We've already told you what our plan is, and it may have been insufficient, but there surely was a plan. But that's the point. They never said that. Had that been the case... Well, they certainly made a lot of reference to it. If you had, though, a trial plan that you believed was the end-all, be-all, and it solved all of the problems, I can't imagine why you wouldn't have submitted that as part of your opposition papers to the motion. Because instead, they went to the judge and said, we didn't submit it because we already gave you one. You have it there in front of you, and the judge actually referred to it. Did he not? Well, respectfully, no, Your Honor, because what plaintiff's counsel pitched at the decertification hearing is not what's articulated in the trial plan. The words per diem and standard injury and all those things don't appear in the trial plan. So should we just judge the sufficiency of the original trial plan? Well, my concern is the district judge said, well, there was no trial plan. It may be that the original one was insufficient in light of later developments, but there surely was at least something for him to take a look at, wasn't there? It is accurate that there were documents filed called trial plans that were submitted and that were in the record. That's correct. Now, I would characterize that as true. And it's also true that the judge's order says they never submitted a trial plan. I think, I'm not sure it's a viable trial plan. I'd have to go back and look. No, actually, I went back and looked and he said they didn't submit a trial plan. Okay, well, I don't have it sitting in front of me. I'll take Your Honor's word for it. The point that I would bring up with respect to the trial plan is that when you're asked directly during a decertification hearing, when it's very clear that the court has concerns with respect to the manageability and the superiority aspects of class certification, there ought to be a very clear and easy way to articulate how you're going to address those concerns. That didn't happen. On top of that, we've had some discussion regarding the plaintiff's counsel brought up the Briseno case and then other cases that address the issue of damages calculations are not necessarily, don't necessarily prevent class certification. All of those cases, particularly the ones that address damages calculations, they arise in the context of most of them involve low-cost consumer products where you're talking about something like, for example, in the Briseno case, I think it's Wesson Oil, so it's a few dollars, something along those lines. I am not aware of any class action case where you're addressing the issue of awarding substantial damages to a class in the civil rights context where the blanket determination that that constitutional right or that civil rights violation is worth X. I'm not aware of one. We've looked. That, I think, actually plays right into why Walmart says you can't use statistical sampling and anecdotal evidence in order to make those types of findings. They use the word formula. Exactly, Your Honor. But by the way, just on the trial plan issue, page two of the judge's order, as an initial matter, the court notes that the plaintiffs have not yet submitted a trial plan of any kind. That's... I would characterize that, Your Honor, as in the context of the decertification motion. I think that's what he meant. But again, I'm not an issue, so I don't know. When you're finished on this point, I'd like to hear your position on attorney's fees. I think we can move there now. It's probably a good segue. With respect to the fees, there was... Your Honor brought up compensation with respect to the class certification issue. The court made it very clear that even though plaintiffs were not successful... And I'm going to skip over the lack of specificity with the order, because from my read, the order actually is fairly specific. The order says that plaintiffs actually are being compensated for claims that they weren't even successful on. So there is a recognition that with respect to, for example, class certification, yes, it's true, the law changed. And that because of that intervening change in the law, that the class certification ended up being decertified. But the court still awarded them some compensation... Gave them about one-sixth of the time that they spent on class certification. I don't know the exact calculation, Your Honor. Let me ask the question in a broader fashion. We have a case that takes 10 years. Has ups and downs in certification and decertification. And at the end of the day, winning counsel gets $300,000 in an award. It seems low, I must say. It seems like not the kind of award that would encourage, as 1983 is supposed to do, counsel to undertake these difficult cases. I have difficulty parsing the award and finding any error in what the judge did on an individual basis. But is there a problem with an award of this size for 10 years of what turns out to be a pretty significant effort? You stopped engaging in the conduct, in part because these folks were successful in their claims. Well, I would put it... In my mind, people may be doing better than I am, but $350,000 to me is still a lot of money. I'm sorry, I think it's almost $400,000. Well, because when you add the costs in, it's over $400,000. Well, there's that... No, purely in attorney's fees, it's $385,000. And then when you include the cost, you got about another $100,000. And then beyond that as well, actually, I referenced it in the briefs, the amounts were actually paid with the interest that was accrued on the attorney's fees amount. It ended up being almost half a million dollars. Fair enough. So let's use that number. You still have 10 years of litigation in which you guys opposed it pretty fiercely along the way, and these folks were successful. So why is that a sufficient award? Well, with all due respect, I think to a certain degree, with all due respect to plaintiff's counsel, I think to a certain degree, the award is a problem of their own making. And what I mean by that is when you walk into a district court judge and you say you want to be paid for every second of everything, every minute... No, and look, I take your point that their application has multiple problems and that the judge was perfectly correct in saying your application is not particularly helpful because you've asked to be recompensed for everything at the same rate, and there's some stuff that's not really well-documented, and you're asking for money for a disbarred lawyer. I understand all those problems. I'm just asking, in the aggregate, is this a fair award? I think it is. I don't think you can overlook all of those issues. You have to look at what the district court was looking at. And when you have someone come in and make that type of claim, when you want to be compensated for eight sanctions motions that were denied, which, by the way, in my opinion, were baseless. But when you ask for that... I mean, every judge is looking at the person that's standing in front of them, and they're automatically making a credibility determination. And when you're making a credibility determination, particularly in the context of awarding attorney's fees, I have to imagine, and I'm not a judge, but I have to imagine that that figures into your calculus. And when somebody walks in and refuses to admit that they shouldn't be paid for every second that they spent on a case, I think it's tough for a judge to look at that circumstance and say, no, I'm not going to give you a substantial haircut. And that's, I think, what happened here. And then when you submit records that are... And my recollection is that the records, and I'd have to go and double check, but I think plaintiffs' counsel were billing their time in quarters. I mean, that's inconsistent with the standard in the industry. The industry is tense. I mean, I couldn't submit a bill for 15 minutes for looking at a minute order. I couldn't do that. So when you take all those things together and you compare it to just the lack of specificity that was in the records that was in front of the judge, if anything, I think by the amount of award that they got, nearly half a million dollars at the end of the day, I think you can make the case that the lower court judge did them a favor. I think he could have denied them... Well, they don't think so. Of course not. Of course not. I don't think you ever get a favor unless you think you got a favor. Well, I'm certain that they're going to disagree with that characterization. But I don't think you can dismiss what was in front of the judge. And I think the standard that governs this court's review of that decision is whether or not what the judge did on its face looks like it makes at least some degree of sense, or whether or not you look at it and say he was completely illogical and implausible. And I don't think we have that based on this record. I see my time is up. Thank you very much, Your Honors. Thank you. All right. Thank you very much. Court thanks counsel for the superb presentations. And we will stand adjourned until tomorrow. 9 o'clock.
judges: Lipez, Bea, Hurwitz